UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER WASHINGTON,<br><br>    Plaintiff,<br><br>    v.<br><br>NICK WHITE, et al.,<br><br>    Defendants. | Case No. 18-cv-00333-WHO<br><br>**ORDER GRANTING MOTIONS TO DISMISS WITH PREJUDICE**<br><br>Re: Dkt. Nos. 33, 34 |

Plaintiff Tyler Washington claims that defendants Nick White, Lindsay Haynes, and Paul Wrapp conspired to have plaintiff maliciously prosecuted for domestic violence and violated her rights to equal protection under the law. I dismissed Washington's prior complaint because Washington had not pleaded facts to rebut the presumption that her prosecution was based on probable cause and there were no facts alleged that plausibly suggested that White (an off-duty Sausalito, California police officer) conspired with Haynes and Wrapp (on-duty Mill Valley, California police officers) to cause Washington's arrest and prosecution. I also explained that Washington failed to allege facts plausibly supporting her denial of equal protection claims.

In her First Amended Complaint, the factual allegations of which I accept as true for purposes of defendants' motions to dismiss, Washington adds more facts to support her theories, including excepts from a post-incident interview between Wrapp and White that Washington notes was not disclosed until her trial was underway. However, the facts pleaded by Washington demonstrate that there was probable cause to arrest her for domestic violence. She still fails to allege any facts that plausibly suggest a conspiracy was formed by White, Haynes, and Wrapp. Her equal protection claims continue to be deficient. Because she identifies no additional unpleaded facts that could support her claims, the case is dismissed with prejudice.

## BACKGROUND

**I.    FACTUAL BACKGROUND**

In October 2015, Washington (who is African American, 5'4" tall, and weighs 120 pounds) met White (who is 6'3" tall and weighs 220 pounds) through an on-line dating site; they subsequently started dating. FAC ¶¶ 3, 4, 8. On January 22, 2016, after Washington dropped an overnight bag at White's home, they went out to dinner. *Id*. ¶ 10. After dinner, they had drinks at two different locations. At the second location, Washington received a text from another man, which upset White. *Id*. ¶ 11. On the drive back to White's home, White was driving unsafely and unleashed caustic and abusive language at Washington. *Id*. ¶ 12. Washington insisted that White pull over for their safety, and he did so after grabbing Washington's arm with unnecessary force. *Id*. While stopped, Washington "removed [White's] eyeglasses to get his attention and White flinched, accidentally causing a minor injury to his face." *Id*.

Once back at White's home, their argument continued. During the argument, White forcibly grabbed and pushed Washington while trying to persuade her to leave despite the fact that she was intoxicated and leaving would pose a safety risk to herself and the public. *Id*. ¶ 13. White knew, given his training and experience, that because of his conduct, size advantage, gender, and Washington's injuries that he could be arrested for domestic violence. *Id*. ¶ 14. Therefore, White acted to protect himself by calling the Mill Valley Police Department to complain that he was a victim of domestic violence. *Id*.

During his first call to the Mill Valley Police Department at 12:23 a.m., White identified himself as a Sausalito Police Department officer, and after finding out that defendant Wrapp was on duty that night, asked the dispatcher to forward his number to Wrapp. *Id*. ¶ 15. White made a second 911 call about 13 minutes later, asking to speak with Wrapp or any other available officers, complaining of an unwanted subject in his house, but declining to "make a report" at that time. *Id*. ¶ 16.

During the next two hours the couple continued to argue while White intermittently videotaped their interactions, capturing his demeaning and abusive language and well as his

2

physical conduct that included grabbing Washington's "arm, body, hurting her, digging nails into her, and acting erratically and manically." *Id*. ¶ 17. The recordings confirm that Washington was reluctant to leave because, after drinking alcohol, she wanted to sleep before driving. *Id*. The recordings also show White threatening Washington that if she did not leave his home before police arrived, she would be arrested and that would impact her job as a preschool teacher. *Id*. These threats were part of White's "abuse of authority" and intent to prevent Washington from telling her side of the story to police, by forcing her to leave before the police arrived. *Id*. "In furtherance of [the] conspiracy" and on information and belief "Haynes and Sgt. Wrapp did not ask to view these videos or even collect them for months." *Id*. ¶ 18.

After Washington left White's apartment, White called Mill Valley dispatch for the third time. He complained that Washington had been drinking and just left. He gave dispatch Washington's name, car make, license plate, and direction of travel. *Id*. ¶ 19. Haynes was the first officer to respond to White's home, followed shortly thereafter by Wrapp. *Id*. ¶ 20. White identified himself as a Sausalito police officer and took advantage of "his pretense of authority as a fellow law-enforcement officer, shown by Haynes and Wrapp's ignoring the objective evidence available to them in [White's] cell-phone videos which would have revealed the cause of Washington's reported injuries to her arm, face and neck." *Id*.

Haynes and Wrapp knew the current incident was not an "isolated one" because two years earlier White had "victimized" and falsely accused another woman of domestic violence. *Id*. ¶ 21. In that instance, however, both White and the victim were interviewed together and neither one was arrested. *Id*. The prior incident also involved drinking, jealousy by White, arguing, and allegations of mutual threats and physical contact. *Id*.

Another Mill Valley officer located Washington's car at 12:56 a.m. *Id*. ¶ 22. Haynes, under the supervision of Wrapp, went to that location and immediately detained Washington, placing her under arrest for domestic violence without interviewing Washington or conducting any other investigation, contrary to policy and training and without probable cause to arrest. *Id*. ¶¶ 23, 24.

On January 23, 2016 at 2:13 a.m., Wrapp returned to White's residence to interview him.

3

*Id.* ¶ 25. In this recorded interview, which was not disclosed until Washington's trial was underway, White admitted to his jealousy. *Id*. Wrapp cautioned him that his delay in calling in the incident made White's version of the events harder to confirm and could give the appearance that he was trying to manipulate the situation. *Id*. White expressed his concern that this incident would turn into a he said/she said situation like the "last time" and he did not want to deal with the backlash at his work. *Id*. White agreed with Wrapp that his relationship with Washington was over. *Id*.

Washington alleges Haynes and Wrapp's police reports, printed on Friday February 5th, were false because: (i) they did not disclose the recorded Wrapp interview; (ii) the injuries White complained of should not have been viewed as "credible" if the officers had reviewed White's cell-phone recordings; and (iii) White was given preferential treatment by not having to give his statement at the police station and did not turn over his cell-phone recordings for months. *Id*. ¶ 26. She also alleges that the police reports: (i) omit the existence of Wrapp's recorded interview with White; (ii) give undue deference to White's version of events; (iii) omit White's threat to Washington that she could lose her job; (iv) omit White's history of one prior DV report; (v) omit the fact that White's jealousy motivated the dispute; (vi) omit White's intent, as stated to Wrapp, to handle this situation differently to avoid a he said/she said situation; and (vii) contain unspecified "inconsistencies" between White's allegations, motives, and the evidence. *Id*. ¶ 27. The omission of this "evidence" was done in furtherance of the "conspiracy." *Id*.

In a criminal complaint filed the work day following the filing of the police reports, February 8, 2016, Washington was charged with one count of misdemeanor domestic violence. *Id*. ¶ 28. Washington alleges that White, Haynes, and Wrapp agreed to "cause" Washington to be arrested and prosecuted for domestic violence without cause. *Id*. ¶ 29. Washington alleges that the Marin County District Attorney did not conduct any investigation before filing the complaint and solely relied on the police reports filed by Haynes and Wrapp. *Id*. ¶ 30. On July 12, 2016, the District Attorney filed a First Amended Complaint adding a second count for aggravated trespass. *Id*. ¶ 31.

The case proceeded to trial. At trial, the recorded "exculpatory" interview between White

4

and Wrapp was disclosed; the existence of that interview had not been disclosed prior to trial. *Id*. ¶ 32. White was the only witness called by the prosecution. *Id*. Washington was acquitted by a unanimous verdict on March 27, 2017. *Id*. ¶ 33.

## II. PROCEDURAL BACKGROUND

Washington filed this action on January 16, 2018. Dkt. No. 1. She asserted four causes of action under 42 U.S.C. § 1983, based on theories that (1) she was maliciously prosecuted based on incomplete, false, and withheld evidence; (2) her rights to equal protection were violated because she was treated differently than the woman who, two years earlier, was accused by White of domestic violence without a rational basis and her arrest was irrational and arbitrary; (3) her rights to equal protection were violated because she was arrested, but the Caucasian prior victim of the false accusation of domestic violence was not; and (4) her rights to due process were violated because the defendants intentionally withheld the exculpatory evidence of White's recorded conversation with Wrapp. Defendants Haynes and Wrapp, and separately White, moved to dismiss all claims. Dkt. Nos. 11, 12. In my May 18, 2018 Order, I dismissed Washington's first three causes of action with leave to amend, explaining in detail what was missing from those causes of action. May 18, 2018 Order (Dkt. No. 31) at 6-12. I dismissed the fourth cause of action with prejudice because she did not have standing to raise that claim. *Id*. at 12-14.

Washington filed a First Amended Complaint on June 7, 2018. In the FAC, she provides a few more facts and clarifies her theory of this case, that White's jealous and possessive behavior led to the domestic violence that occurred and White conspired to have Washington arrested so that he would not be arrested. Haynes and Wrapp, and separately, White, again move to dismiss.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

5

1  (citation omitted).  There must be "more than a sheer possibility that a defendant has acted

2  unlawfully."  *Id*.  While courts do not require "heightened fact pleading of specifics," a plaintiff

3  must allege facts sufficient to "raise a right to relief above the speculative level."  *See Twombly*,

4  550 U.S. at 555, 570.

5  In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

6  Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

7  plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court

8  is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

9  fact, or unreasonable inferences."  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

10  2008).

11  If the court dismisses the complaint, it "should grant leave to amend even if no request to

12  amend the pleading was made, unless it determines that the pleading could not possibly be cured

13  by the allegation of other facts."  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In

14  making this determination, the court should consider factors such as "the presence or absence of

15  undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous

16  amendments, undue prejudice to the opposing party and futility of the proposed amendment."  *See*

17  *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

### I.  MALICIOUS PROSECUTION

As explained in detail in my prior Order, because the District Attorney filed charges and the case proceeded to trial, Washington must state sufficient facts that "overcome" the presumption of probable cause and independent prosecutorial judgment in order to allege a malicious prosecution claim against the arresting officers.  She must do so by pleading "specific allegations showing that the officers procured the filing of the criminal complaint 'by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith.'"  May 18, 2018 Order at 5-8.[1]

---

[1] *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004) (In California, there "is a long-standing principle of common law that a decision by a judge or magistrate to hold a

6

Washington claims she has done so by identifying the false and misrepresented facts included in the police reports, namely the failure of those reports to include evidence from White's cell-phone recordings and the recorded Wrapp interview, as well as the facts that Washington believes led White to "create" this situation (his jealousy and prior DV report). FAC ¶¶ 26-27. But the FAC admits that the cell-phone recordings were "disclosed" within months of the arrest; the District Attorney had access to them before the amended criminal complaint was filed that added the trespass charge to the existing (and not withdrawn) domestic violence charge. The District Attorney had access to the police reports as well, yet used prosecutorial discretion to add a charge *and* continue to prosecute the DV charge. The *Smiddy* prosecutorial independence presumption cannot be overcome by focusing on the first criminal complaint (when those cell-phone recordings had not yet been produced) because the second criminal complaint and the prosecutorial discretion it was based on superseded it.[2]

As to the unproduced Wrapp interview, White's problem is that she identifies *no evidence* from the that interview that could have exculpated her from either the DV or the trespass charges, or was otherwise material to her being prosecuted. The "evidence" from that interview that Washington relies on in her FAC is relevant only to her theory of why the incident played out as it did (White's jealousy initiated the argument and White's motivation to avoid another he said/she said situation and force Washington to leave). FAC ¶ 25.[3] None of that evidence, however,

---

defendant to answer after a preliminary hearing constitutes *prima facie*-but not conclusive-evidence of probable cause" that can be rebutted "by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith."). *See also Newman v. County of Orange*, 457 F.3d 991, 995 (9th Cir. 2006) ("If charges are filed, *Smiddy* protects the officers unless such evidence shows that officers interfered with the prosecutor's judgment in some way, by omitting relevant information, by including false information, or by pressuring the prosecutor to file charges.") (relying on *Smiddy v. Varney*, 665 F.2d 261, 267 (9th Cir. 1981)).

[2] Washington's reliance on *Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP*, 184 Cal. App. 4th 313, 333 (Cal. App. 2d Dist. 2010), for the proposition that a malicious prosecution action does not have to be addressed to an entire lawsuit is misplaced. That discrete portions of a civil lawsuit can lead to a malicious prosecution claim is irrelevant to the question of whether the probable cause or prosecutorial discretion presumptions have been rebutted in a criminal prosecution.

[3] I assume for purposes of ruling on these motions that Washington has stated sufficient facts to support her allegation that defendants intentionally withheld the existence of the Wrapp interview

7

undermines the evidence that the police officers undisputedly had: Washington injured White's face during their argument, giving them probable cause to arrest her for domestic violence, which led to her prosecution for domestic violence.[4]

The problem for Washington is that she *admits* in the FAC that she committed domestic violence against White as she removed his eyeglasses to get his attention. That she may have accidentally injured White and done so while attempting to convince him to drive more safely to protect themselves and the public is not material to the legal question of whether she could be prosecuted for DV, even though her justifications may well have been significant to her defense at trial. Similarly, the chain of probable cause *as to her* is not broken despite her view that White should have been arrested for DV because *he* inflicted injuries on her during their argument (as allegedly shown in White's cell-phone recordings).[5]

The FAC, like the prior complaint, fails to identify *any facts* that Washington told the arresting officers that were omitted (intentionally and in bad faith) from the police reports. Washington complains of the "deference" Haynes and Wrapp showed to White "in terms of any analysis of objective information about injuries that were reported," FAC ¶ 27b, but fails to identify *the facts* that were missing from the reports. The specific omissions that Washington complains of, about White's motivation and history of prior DV report (FAC ¶¶ 26-27), do not undermine the fact that she caused an injury to White.

In sum, Washington still fails to plead necessary facts showing that Haynes and Wrapp

---

from the District Attorney.

[4] The same is true for Washington's assertion that Haynes and Wrapp knew about White's prior DV report and yet failed to include it in their police reports about Washington's arrest. There no facts alleged to support that, and Washington provides no plausible theory why any information about that prior incident should have been included in the arrest reports regarding Washington's arrest.

[5] In her Opposition, Washington contends that Haynes and Wrapp knew the injuries alleged by White were not the product of DV by Washington and Wrapp "conceded" that in his recorded interview with White. Oppo. at 8. But nothing in the portions of the interview cited by Washington in her FAC support that contention. *See* FAC ¶ 25. In addition, the injury to White's face cause by Washington occurred in the car on the ride to White's home and the cell-phone recordings show only conduct after that point. The cell-phone recordings, therefore, could not be relevant to whether Washington had injured White before that point.

"procured the filing of the criminal complaint" *against Washington* by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith. As to White, that Washington believes he was trying to protect himself from a charge of domestic violence does not undermine the basis for *Washington's prosecution.* She does not identify any *lies* that White told Haynes or Wrapp, knowingly false facts that Haynes and Wrapp included in their police reports that *led* to her prosecution, or facts known by Haynes or Wrapp that they failed to include in their reports that could have caused the District Attorney to not charge her.[6]

Washington has, again, failed to allege facts to overcome the presumption of probable cause and independent prosecutorial discretion, and her malicious prosecution claim fails as a matter of law. Because my last Order clearly laid out what Washington needed to allege and Washington has not identified (in opposition or at oral argument) any additional, as yet unalleged facts to support these claims, this claim is dismissed WITH PREJUDICE.[7]

## II. EQUAL PROTECTION

### A. Class of One

As I noted in dismissing this claim in my prior Order, Washington needed to plead facts showing that she was intentionally discriminated against and treated differently from others who were similarly situated. May 18, 2018 Order at 10-11. In particular, I noted that Washington was required to plead facts showing that given the information of which Haynes and Wrapp were aware, they acted without a rational basis in arresting her. *Id*. at 11. The first problem, as noted above, is that she admits she caused an injury to White during their argument. A rational basis – in other words, probable cause – existed for her arrest. In her FAC, Washington argues that in the prior DV report both sides complained of injuries, but there are no allegations that in the prior case

---

[6] As I noted in my prior Order, Washington cannot get by on conclusory allegations that the police reports were "biased or incomplete" or as phrased in the FAC "Defendants' reports omit or misrepresent facts" without identifying the missing or misstated facts. For example, Washington does not allege that she told Haynes *any specific facts* regarding that night that were not included in Haynes' report that could have affected the District Attorney's decision to prosecute her.

[7] I do not, therefore, need to address whether Washington has identified a constitutional right violated by defendants' conduct or her continued failure to allege facts showing that White "controlled" Haynes and Wrapp or that the three formed a conspiracy sufficient to create liability for White for the malicious prosecution claim.

9

either White or the other woman had visible injuries supporting probable cause to arrest, as here.

The second problem is that some forms of state action "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591 (2008). In those cases, "treating like individuals differently is an accepted consequence of the discretion granted to governmental officials." *Id*. at 603. No one was arrested as a result of the prior DV incident, where both White and the other woman were on scene and interviewed. But in *this situation,* Washington was arrested after the third call by White to the police department, and after he had been interviewed in person by Haynes and Wrapp and shown them his injuries. This shows not only that there are significant factual differences between the cases but highlights how individualized assessments of the type involved in DV arrests do not fit within the "context of arm's-length regulation" where class of one equal protection liability may be found. *Id*. at 604. There is no evidence that Haynes and Wrapp were exercising their discretion (or the Mill Valley police department more generally) with respect to DV arrests in such a manner that Washington can be found to have been treated differently and detrimentally based on only one, admittedly different, incident. *See, e.g., Towery v. Brewer*, 672 F.3d 650, 660–61 (9th Cir. 2012) (requiring evidence of a "pattern of generally exercising the discretion in a particular manner while treating one individual differently *and detrimentally*") (emphasis in original).

### B. Race

Finally, in dismissing Washington's equal protection based on race claim in my prior Order, I noted that Washington failed to allege any facts demonstrating that she was arrested due to *racial animus* on the part of the defendants. The only fact she could identify is that in the prior incident, the other woman involved was white. In the FAC, she includes no allegations that Haynes and Wrapp were out to get her because of her race. May 18, 2018 Order at 12; *but see Awabdy v. City of Adelanto*, 368 F.3d at 1070 (allowing equal protection claim to go forward where plaintiff alleged facts that defendants "were out to get him" based on racial animus). She added no facts, circumstantial or otherwise, to cure this defect. Instead, she contends in her oppositions that "common sense" and abundant statistical data show that Black Americans are

10

more likely to be arrested while driving because they are black. Oppo. to White at 13-14. That is insufficient to allege a denial of equal protection here, especially in the context of an arrest for DV based only on one admittedly different situation.

## CONCLUSION

Washington's malicious prosecution and equal protection claims are DISMISSED. She was explicitly told what was missing in my last Order, the defects were not cured in the FAC, and she identified no additional facts that could be alleged in either her oppositions to the pending motions or during oral argument. Accordingly, these claims are now DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: August 28, 2018

William H. Orrick
United States District Judge